IN THE MATTER OF LYDIA RUTH RINEHART, A MENTAL INCOMPETENT.

THE PLAINFIELD TRUST STATE NATIONAL BANK, GUARDIAN OF LYDIA RUTH RINEHART, A MENTAL INCOMPETENT, PLAINTIFF-RESPONDENT, v. HARRY H. RINEHART, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 13, 1961—Decided November 22, 1961.

Before Judges GOLDMANN, FOLEY and FULOP.

*Mr. William R. Cohen* argued the cause for appellant (*Messrs. Cohen, Hoagland & Cohen,* attorneys; *Mr. Richard S. Cohen,* on the brief).

*Mr. Joseph I. Bedell* argued the cause for respondent (*Messrs. Lyness & Bedell,* attorneys; *Mr. Irving M. Hirsch,* on the brief).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. Defendant husband appeals from a Chancery Division judgment in favor of plaintiff bank, guardian of his mentally incompetent wife, now and for sometime past a patient at the N. J. State Hospital at Marlboro, determining that (1) certain U. S. savings bonds were jointly owned by defendant and his wife, and (2) defendant is not entitled to reimbursement from her estate for monies he paid the State of New Jersey or the County of Union for her maintenance at Marlboro, and that "the primary liability and obligation for such support is upon the defendant." We are in agreement with the determination of the Chancery Division judge as to the ownership of the bonds, for the reasons expressed in his oral opinion delivered at the close of the testimony. We are also in accord with his determination that defendant is not entitled to reimbursement from his wife's estate for monies he paid for her maintenance at the Marlboro institution, for essentially the reasons given by him in *In re Rinehart,* 66 *N. J. Super.* 90 (*Ch. Div.* 1961).

Defendant criticizes the trial court's reliance on *In re Hannon*, 52 *Pa. Dist. & Co. R.* 160 (*C. P.* 1944), dealing with the then Pennsylvania statute which provided that:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution * * * who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided."

The court pointed out that

"* * * The manifest purpose of this act is to facilitate the collection of bills for maintaining inmates in State institutions by enabling the Commonwealth to proceed directly against the inmate's estate, in the first instance. It enlarges the sources from which the Commonwealth can get satisfaction of its bill, but does not attempt to alter the existing liability of others therefor. * * * As between the husband and wife, however, the primary liability of support remains, as always, upon the husband. That liability arises out of the marriage relation, and is among the wife's most important and valuable rights springing from the marriage contract. * * *" (at *pages* 164–5)

Defendant attempts to minimize the relevancy of this decision by referring to a statute subsequently enacted in 1951, 50 *Pa. Stat. Ann.*, § 1361, which provides, in part:

"Except as otherwise specifically provided in this act, liability for all costs of care of any patient in any State institution is hereby imposed, in the following order, against—

(1) The patient's real and personal property;

(2) The persons liable for the patient's support;

(3) The Commonwealth or in the case of an inebriate, the county or institution district in which he resides."

Defendant contends that this new statute overruled *Hannon*. He has overlooked *Liberty Bank & Trust Co. v. Commonwealth*, 85 *Pa. Dist. & Co. R.* 279 (*C. P.* 1952). The court in that case dealt with the question of whether the new statute subordinated the husband's liability for his incompetent wife's support to the exhaustion of her private estate. The answer was in the negative, the court un-

equivocally stating that the statute in no way changed the common law with respect to the husband's liability for support, and that the act was passed "in the interests of the Commonwealth and not for the relief of husbands."

█■ As the trial judge observed, a statute which purports to derogate from the husband's common law obligation to support his wife must be construed strictly. "If a change in the common law is to be effectuated, the legislative intent to do so must be clearly and plainly expressed." *DeFazio v. Haven Savings & Loan Ass'n*, 22 *N. J.* 511, 519 (1956). We find nothing in *N. J. S. A.* 30:4-65, 30:4-66 or 30:4-74, upon which defendant relies, to indicate that the Legislature intended to relieve a husband of his obligation to support his incompetent wife.

Immediately following the entry of judgment on March 9, 1961, defendant gave notice of motion that he would apply to the Chancery Division under *R. R.* 4:53-2 for an order amending the judgment on the ground that it was unclear as to the obligations of the parties with respect to the incompetent's future maintenance, as well as for an order directing the guardian to pay all maintenance charges at Marlboro State Hospital from the date of the order. The motion was denied.

Defendant contends that, at the very least, the income of his wife's separate estate should be applied toward her maintenance. Her estate is estimated to be worth almost $22,000 since, by order of the Chancery Division, the guardian was authorized to sell her interest in certain lands for not less than $12,000, and her half-share of the U. S. savings bonds amounts to $9,875. He concedes there is some force to the argument that the fund should be preserved against the day when he may be totally unable to maintain her, but avers there is no justification for allowing the income of her estate to accumulate while he, obliged to support himself and a minor child of the marriage, continues to maintain her. He relies upon English authorities: *Brodie v. Barry*, 2 *Ves. & B.* 35 (*Ch.* 1813);

*Nettleshipp v. Nettleshipp,* 10 *Sim.* 236 (*Ch.* 1839), and *Symes v. Lee,* 26 *L. J.* 665 (*Ch.* 1857).

■ This argument was not advanced in the Chancery Division before judgment rendered and therefore we ordinarily would not consider the point. *Anderson v. Modica,* 4 *N. J.* 383, 390 (1950); *Apex Metal Stamping Co., Inc. v. Alexander & Sawyer, Inc.,* 48 *N. J. Super.* 476, 483 (*App. Div.* 1958); *R. R.* 1:7–1(c). However, the question was directly presented to the Chancery Division judge on the motion to amend, and fairness requires that we consider it.

In *Brodie v. Barry* Lord Eldon declared he could find no authority for the husband's contention that the wife's income be used. He said that the court would not give any of the income from the wife's estate to the husband for her maintenance until it was sure of his inability to pay. The court did not decide that the husband should receive the separate income, but merely referred the matter to the master to inquire into the circumstances. Lord Eldon suggested that if petitioner had been able to support his wife, and in fact had not done so, he would dismiss the petition.

In *Nettleshipp* the court allowed the husband to be reimbursed from the income of his incompetent wife's estate. However, it insisted upon a more positive affidavit as to his means before it would be willing to give him money from his wife's annuity. According to the reporter, no further affidavit was ever made. Thus, in *Brodie* and *Nettleshipp* the courts held that the husband would have to establish hardship before he could possibly invade the wife's income for her own maintenance. In neither case did the courts discuss an invasion of *corpus.*

In *Symes v. Lee* petitioner sought payment out of *corpus* in addition to income. The Master of the Rolls refused to invade *corpus* but did order that income be paid to the petitioner.

■■ There is nothing to show just what defendant's financial circumstances are. No testimony was taken or offered as to his income and expenditures, resources, or assets and liabilities. We know only that he supports himself and the child of the marriage. If he can establish, by persuasive proof, that he is unable to maintain his wife at the Marlboro institution without financial hardship, he may then have some basis for applying to our courts for relief in the form of having her maintenance charges paid out of her estate. Should the court, on such application, conclude that his financial circumstances, in relation to hers, warrant the payment from her estate of all or part of the expenses in question, recourse should first be had to income. *Corpus* should be invaded only as an ultimate necessity, since it is important to preserve it for as long a time as possible against the day when there may be no one to pay for her care.

Accordingly, the Chancery Division judgment determining that the incompetent wife is entitled to half of the U. S. savings bonds and that defendant may not have reimbursement for the monies he has expended for her care at Marlboro, is affirmed. Leave is given to defendant to apply to the Chancery Division to be relieved of part or all of his obligation to maintain his wife at the state institution, and to have the income of her estate applied toward her maintenance, and this upon a positive showing of his inability to meet his marital obligation in whole or in part.